UNITED STATES DISTRICT COURT       <u>FOR ONLINE PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                               :
ANTWAN GATHERS,                    :
                               :
           Petitioner,        :      <u>MEMORANDUM AND ORDER</u>
                               :
          -against-         :      11-CV-1684 (JG)
                               :
PEOPLE OF THE STATE OF NEW YORK,  :
                               :
          Respondent.     :
-------------------------------------------------------------x

A P P E A R A N C E S :

       ANTWAN GATHERS
          # 07-A-1326
          Green Haven Correctional Facility
          P.O. Box 4000
          Stormville, New York 12582

          Petitioner, *Pro Se*

       RICHARD A. BROWN
          District Attorney of Queens County
          125-01 Queens Boulevard
          Kew Gardens, New York 11415
       By:    John M. Castellano
          Sharon Y. Brodt
          John F. McGoldrick

          Attorneys for Respondent

JOHN GLEESON, United States District Judge:

      Antwan Gathers, who is currently incarcerated at Green Haven Correctional

Facility, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On

January 16, 2007, Gathers pleaded guilty to a charge of manslaughter in the first degree and, on

February 27, 2007, he was sentenced to a 23-year term of imprisonment by the Supreme Court of

the State of New York, Queens County.  Gathers seeks habeas relief on the grounds that he was

denied his constitutional rights to a speedy trial, to the effective assistance of counsel, and to

testify and present evidence to the grand jury.  He also claims that his conviction was tainted by

prosecutorial misconduct, and that there were defects in the felony complaint against him.  Oral

argument, at which Gathers appeared via videoconference, occurred on October 17, 2011.  For

the reasons stated below, the petition is denied.

BACKGROUND

A.      *The Offense Conduct and Initial Investigation*

During his plea allocution, Gathers admitted that he shot and killed Ramon

Adames during a robbery of a deli in Queens on February 20, 2002.  Jan. 16, 2007 Tr. 34–36.[1]

The police originally arrested someone else for the crime based on an eyewitness's identification.

However, Gathers's fingerprints were recovered from a pack of cigarettes left at the deli and the

police began to suspect his involvement.

At the time of the offense, Gathers was on parole due to a prior conviction.  On

February 28, 2002, eight days after the killing of Adames, Gathers was arrested on a charge that

he had violated the terms of his parole.  Sept. 11, 2006 Tr. 79–80.  The alleged parole violations

were unrelated to the murder of Adames.  During a search of Gathers's home, the police found a

gun, which the government later contended was the weapon used to shoot Adames.  Sept. 7,

2006 Tr. 55.

---

[1]      Citations to transcripts refer to the transcripts from Gathers's state trial court proceedings except that citations to the transcript dated October 17, 2011, refer to the transcript of the oral argument of Gathers's habeas petition in this Court.

B.      *The Period From Arrest to Indictment*

On March 1, 2002, while he was incarcerated on the parole violation, detectives spoke to Gathers about the murder of Adames.  Gathers initially denied having been to the deli on the date of the offense.  Apr. 25, 2005 Tr. 17.  After the police confronted him with the fact that his fingerprints had been found on cigarettes left at the deli, Gathers admitted he had been to the deli on that date, but denied his involvement with the robbery or shooting.  *Id.* at 19–20, 34–35.  The following day, Gathers was charged in a felony complaint with various offenses, including the murder of Adames.

Gathers remained incarcerated for the next 14 months.  He does not dispute that for approximately 12–13 of these months (the precise amount is unclear) he was incarcerated due to the parole violation rather than the pendency of the murder charge.  Approximately one to two months after his detention in connection with the parole violation ended, Gathers sought and obtained his release on bail pursuant to N.Y. Crim. Proc. Law § 180.80.

On May 3, 2004, Gathers was arrested for an unrelated offense in Nassau County.  He pleaded guilty to that offense, was sentenced to a one-year term of incarceration, and was released on December 28, 2004.

The indictment charging Gathers with the murder of Adames was not returned until October 7, 2004, when he was still incarcerated in Nassau County.  The government asserts that it was conducting its investigation and engaging in plea negotiations with Gathers throughout the pre-indictment period.  It further asserts that it was attempting to locate a witness to testify before the grand jury.  Tirino Aff., Apr. 27, 2005, at 4 ("When we were finally able to obtain an additional witness who was previously unavailable to us, we presented the case immediately to the grand jury.").

Gathers initially intended to testify before the grand jury, as is his right under New York law.  *See* N.Y. Crim. Proc. Law § 190.50(5)(a).  His testimony was scheduled for October 6, 2004.  However, his attorney at the time informed the government that Gathers did not wish to testify.  Zuckerman Aff., Feb. 18, 2005 ¶¶ 3–4.  The grand jury voted the indictment the following day, and the indictment was filed on October 21, 2004, approximately 31 months after Gathers was first charged by complaint.

Gathers had apparently been dissatisfied with his first attorney for some time.  As early as October 10, 2002, he had submitted a written complaint regarding his first attorney's performance and requested reassignment of counsel.  Among other things, Gathers complained that his attorney had "take[n] adjournments and postpones [the] Grand Jury hearing."  Letter to Presiding Judge, Oct. 10, 2002 ¶ 6.  Shortly after Gathers's arraignment in November 2004, he was assigned a new attorney.

C.     *The Period From Indictment to Sentencing*

In a *pro se* motion dated November 26, 2004, Gathers sought dismissal of the indictment on the grounds that he had been deprived of his right to testify before the grand jury and his right to a speedy trial.  In a second *pro se* motion dated April 13, 2005, Gathers moved to dismiss the indictment on speedy trial grounds.[2]  The state trial court rejected Gathers's claim that he had been denied his right to testify before the grand jury by order dated March 2, 2005, and denied the motion to dismiss the indictment on speedy trial grounds by order dated May 10, 2005.

---

[2]     Gathers's second attorney adopted the *pro se* motion to dismiss on speedy trial grounds.

Gathers also sought to suppress certain evidence.  In December 2004, Gathers's second attorney filed an omnibus motion seeking, among other things, suppression of Gathers's statements to police on March 1, 2002.  The trial court conducted a *Huntley* hearing[3] in connection with that motion on April 25, 2005.  Gathers also sought to suppress the gun found during the search of his home on February 28, 2002, when he was arrested for violation of his parole.  To address the legality of the search, the trial court held a *Mapp* hearing,[4] which took place over several days in September 2006.  In decisions dated June 22, 2005, and November 6, 2006, respectively, the trial court denied Gathers's motions to suppress his statements and the gun.

In the meantime, Gathers had again sought reassignment of counsel.  In May 2005, shortly after the *Huntley* hearing, Gathers was assigned his third attorney.  That attorney remained Gathers's counsel through his plea and sentencing.

On January 16, 2007, the trial court was set to begin jury selection for Gathers's trial.  The government advised the court that it was willing to enter into a plea bargain in which Gathers would plead guilty to manslaughter in the first degree and receive a sentence of 23 years' imprisonment.  Gathers told the court he was considering taking the plea.  He said, "I understand you just said that if I am not guilty I should not plead to it.  I kind of agree with that theory.  However, I know just because I am not guilty does not necessarily mean that I will get acquitted."  Jan. 16, 2007 Tr. 5 (paragraph break removed).  The court told Gathers he could either accept the plea offer or go to trial that day.  *Id.* at 6.

---

[3]     A hearing to review the manner in which the police obtained statements from a criminal defendant is commonly referred to in New York as a *Huntley* hearing, named for *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965).

[4]     A *Mapp* hearing is named for *Mapp v. Ohio*, 367 U.S. 643 (1961).

Gathers, after consulting with counsel, initially decided to accept the plea offer. *Id.* at 7.  He then wavered and stated he wanted to go to trial.  *Id.* at 10–11.  Later that day, Gathers changed his mind again and decided to plead guilty.  *See id.* at 31.  Gathers stated that he was pleading guilty freely and voluntarily and that he had discussed his plea with his attorney. *Id.* at 33.  He said he understood that by pleading guilty, he would be waiving his right to a jury trial, his right to confront the witnesses against him and his right to testify in his own defense. *See id.* at 33–34.  He then admitted shooting and killing Adames during a robbery.  *Id.* at 34–36.

Gathers executed a written waiver of his right to appeal his conviction in open court, after having stated that he had discussed that waiver with his lawyer and understood what it meant to waive his right to appeal.  *Id.* at 38–39.  The prosecution recommended a 23-year term of imprisonment.  On February 27, 2007, the court imposed that sentence.  The court ordered that his sentence for the manslaughter conviction run consecutively to any undischarged sentences based on unrelated offenses.  Feb. 27, 2007 Tr. 7.

Before imposing sentence, the court asked Gathers if he stood by his guilty plea and Gathers stated that he did.  *Id.* 2–3.  Gathers reiterated that no one had pressured him or threatened him to plead guilty.  *Id.* at 3.

D.      *The Direct Appeal*

Gathers appealed his conviction to the Appellate Division of the Supreme Court of the State of New York, Second Department.  The sole claim asserted in Gathers's appellate

6

brief was that the trial court had erred in denying his motion to dismiss the indictment on speedy trial grounds without conducting a hearing.[5]

On August 25, 2009, the Appellate Division affirmed the trial court's judgment. *People v. Gathers*, 883 N.Y.S.2d 913 (App. Div. 2009). The Appellate Division held that Gathers's right to a speedy trial was not violated because "[t]he People established that the ongoing investigation provided a reasonable excuse for the 2 1/2-year delay between the commission of the crimes and the indictment of the defendant." *Id.* at 913. It also held that it was proper to deny the motion without a hearing "since there was a fully-developed record as to the reasons for the delay." *Id.*

Gathers moved for leave to appeal to the New York Court of Appeals. A Judge of the Court of Appeals denied leave on November 10, 2009. *People v. Gathers*, 920 N.E.2d 99 (2009) (Ciparick, J.).

E.       *The State Collateral Attack*

Gathers filed a *pro se* motion dated February 8, 2011, in state court seeking to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10.[6] He submitted an amended motion, dated April 28, 2011. In his amended motion, Gathers challenged his conviction on the following grounds: (1) the felony complaint against him was defective due to a lack of proper verification and a supporting deposition; (2) his first attorney provided ineffective assistance of

---

[5]        According to the government, the Appellate Division gave Gathers permission to file a *pro se* supplemental brief, but he did not do so.

[6]        The government concedes that this motion was filed on February 8, 2011, for purposes of tolling the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). *See* Letter from Sharon Y. Brodt, May 6, 2011, at 2 (D.E. #4) (citing *Fernandez v. Artuz*, 402 F.3d 111 (2d Cir. 2005)); *see also* 28 U.S.C. § 2244(d)(2). Since that was the last day before the limitations period would have ended, and Gathers's federal habeas petition was filed before that state-court challenge was decided, the instant petition is timely. *See* 28 U.S.C. § 2244(d)(1)–(2).

counsel by waiving Gathers's presence at court appearances, failing to investigate the case and

withdrawing Gathers's invocation of his right to testify before the grand jury; (3) his second

attorney provided ineffective assistance by failing to request a *Wade* hearing,[7] failing to

investigate the case, and submitting flawed motions; and (4) he was subjected to prosecutorial

misconduct in the form of the prosecutor's purportedly false statements that the weapon found in

Gathers's home was the weapon used in the Adames shooting.

Gathers's § 440.10 motion was denied on October 19, 2011.  The court held that

all of Gathers's claims were subject to a mandatory procedural bar because they were based on

the trial-court record but not raised in Gathers's direct appeal of his conviction.  *See*

Memorandum and Order at 1, *People v. Gathers*, No. 2365-04 (N.Y. Sup. Ct. Oct. 19, 2011)

(citing N.Y. Crim. Proc. Law § 440.10(2)(c)).  It rejected the claim regarding the insufficiency of

the felony complaint on the additional ground that "said felony complaint was superceded by the

above-captioned indictment."  *Id.*  The court also held, *inter alia*, that "[b]y specifically

excluding his third attorney from his claim of ineffective assistance of counsel, defendant waived

his claim as to the two prior attorneys."  *Id.*

F.      *The Proceedings in This Court*

Gathers filed the instant petition for habeas relief on April 4, 2011.  He initially

advanced seven grounds for relief: (1) the violation of his right to a speedy trial; (2) ineffective

assistance of his first attorney; (3) the denial of his right to testify before the grand jury;

(4) ineffective assistance of his second attorney; (5) the withholding of exculpatory evidence

---

[7]      A *Wade* hearing is held to determine if a witness's identification should be suppressed and is
named for *United States v. Wade*, 388 U.S. 218 (1967).

from the grand jury; (6) prosecutorial misconduct; and (7) defects in the felony complaint against him.[8]  Pet. ¶ 13 (D.E. # 1).

During oral argument and in subsequent filings, Gathers has added to his claims. In his petition he argued that only his first two attorneys provided ineffective assistance, but he asserted at oral argument that his third attorney provided ineffective assistance as well.[9] Thereafter, Gathers submitted a discovery request suggesting that he might be seeking to raise a claim that the prosecution had failed to disclose evidence that was favorable to him, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  *See* Letter from Gathers, Oct. 19, 2011, at 1–2 (D.E. #14).  I issued an Order directing Gathers to clarify the claims he was asserting, *see* Order, Nov. 10, 2011, at 2 (D.E. #16),[10] and he responded by indicating that he was pursuing an ineffective assistance claim with respect to his third attorney as well as a *Brady* claim, *see* Response to Decision-Order Dated 11-10-11, Nov. 22, 2011 (D.E. #18).

Gathers has moved to stay the present petition and hold it in abeyance until he has exhausted all his claims.  The government submitted a response in which it agreed that Gathers had asserted unexhausted claims, but it took "no position on his motion for a stay."  Letter from Sharon Y. Brodt, May 6, 2011, at 2 (D.E. #4).  The government did take a position when it later filed its opposition to the habeas petition: it now argues the unexhausted claims should be denied rather than stayed.

_____

[8]      Gathers did not list the defect in his felony complaint as a ground for relief in his habeas petition, but he asked the Court to consider this issue in a subsequent filing.  *See* Response to Order, May 25, 2011, at 3 (D.E. #5).  I deem the petition to have been amended to include this claim.

[9]      During oral argument, Gathers also repeatedly mentioned the fact that he was on psychiatric medications at the time he pleaded guilty.  *See* Oct. 17, 2011 Tr. 7, 19.  However, Gathers expressly disclaimed any argument that he was incompetent when he pleaded guilty.  *Id.* at 21–22.

[10]      My Order denied Gathers's request for this Court to assist him in obtaining discovery in his § 440.10 proceedings.

Gathers has also moved for appointment of counsel to assist him in investigating the alleged falsification of documents. *See* Letter from Gathers, Nov. 2, 2011, at 1–2 (D.E. #17). Gathers bases this request on a discrepancy regarding the date on which the state court denied his § 440.10 motion. While the state court's staff had told both Gathers and the government that the motion had been denied in September 2011, the motion actually remained pending until October 19, 2011. Gathers claims this is part of a pattern of falsification of documents and seeks an attorney to assist him in preventing such acts.

DISCUSSION

A.   *The Exhaustion Requirement and "Mixed" Petitions*

Federal courts have long required state prisoners seeking a writ of habeas corpus to first exhaust all available state judicial remedies, *e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 731 (1991), and this requirement is codified by statute, *see* 28 U.S.C. § 2254(b)(1)(A). Exhaustion requires a petitioner to have "fairly presented" his federal constitutional claim to the state courts by apprising them of "both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

A "mixed" petition is one that presents both exhausted and unexhausted claims. *Burton v. Stewart*, 549 U.S. 147, 154 (2007). A federal court has several options when confronted with a mixed petition. It may employ the pre-AEDPA practice of dismissing the mixed petition, *see Rose v. Lundy*, 455 U.S. 509, 510 (1982), but since the pendency of the federal petition does not operate to toll AEDPA's one-year limitations period, *see Duncan v. Walker*, 533 U.S. 167, 181–82 (2001), that practice can work an unfairness on the petitioner by

10

leaving little or no time to refile in federal court after all the claims are exhausted.[11]  If the unexhausted claim has no merit, the federal habeas court is empowered by AEDPA to deny the claim on the merits.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Finally, in appropriate circumstances, a habeas court confronted with a mixed petition has the authority to stay the petition and hold it in abeyance until all claims are exhausted.  *Walker v. Martin*, 131 S. Ct. 1120, 1126 n.3 (2011); *Rhines v. Weber*, 544 U.S. 269, 277 (2005); *Zarvela v. Artuz*, 254 F.3d 374, 380 (2d Cir. 2001).

The Supreme Court has made it clear that "stay and abeyance should be available only in limited circumstances."  *Rhines*, 544 U.S. at 277.  First, there must be "good cause for the petitioner's failure to exhaust his claims first in state court."  *Id.*  Good cause would generally exist, for example, if a petitioner filed in federal court due to "reasonable confusion about whether a state filing would be timely" and thus whether the one-year statute of limitations applicable to federal habeas claims had been tolled.  *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).  Second, even if there is a showing of good cause, a court may not grant a stay if the "unexhausted claims are plainly meritless."  *Rhines*, 544 U.S. at 277.

Following *Rhines*, many courts have held that if the unexhausted claims are plainly meritless, the court should deny the claims rather than dismiss them for lack of exhaustion.  *See, e.g.*, *Nelson v. Heath*, No. 11-CV-2183 (JG), 2011 WL 4711763, at *10, *12 (E.D.N.Y. Oct. 3, 2011); *Clendinen v. Unger*, No. 05 Civ. 7657 (PKC), 2006 WL 2465176, at

---

[11]        A court may also dismiss the unexhausted claims and allow a petitioner to "proceed with only the exhausted claims, but doing so risks subjecting later petitions that raise new claims to rigorous procedural obstacles." *Burton*, 549 U.S. at 154.

*10 (S.D.N.Y. Aug. 22, 2006).  As mentioned above, the federal habeas statute expressly permits a denial in such circumstances.  Denying unexhausted but plainly meritless claims is consistent with congressional goals that federal habeas proceedings not unduly delay the finality of state court judgments or create incentives to file in federal court before state remedies are exhausted. *See Rhines*, 544 U.S. at 276–77.

Here, there is no dispute that Gathers has asserted at least one exhausted claim (his speedy trial claim) and several unexhausted claims.[12]  Gathers has moved to stay his petition until his remaining claims are exhausted.  The government agrees that, at a minimum, the petition should be stayed, but argues that denial of the petition is appropriate.  It argues that Gathers's unexhausted claims are either procedurally defaulted or plainly meritless and that his exhausted speedy trial claim cannot withstand the deferential standard of review in federal habeas proceedings.  Because I conclude that Gathers's unexhausted claims are plainly meritless and that his speedy trial claim does not warrant habeas relief, I deny the petition.[13]

---

[12]    After oral argument on Gathers's petition in this Court, the state court denied Gathers's § 440.10 motion.  The claims raised in that motion remain unexhausted because Gathers may seek leave to appeal to the Appellate Division.  *See* N.Y. Crim. Proc. Law § 450.15(1); *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990); *Rodriguez v. Ercole*, No. 08 Civ. 2074 (CM) (KNF), 2008 WL 4701043, at *3 (S.D.N.Y. Oct. 24, 2008).  Gathers has informed the Court that he has sought leave to appeal and there is no indication that the Appellate Division has acted on his application.  Moreover, Gathers's claims that his third attorney provided ineffective assistance and that the prosecution failed to turn over *Brady* material were not raised in his § 440.10 motion and thus are unexhausted.

[13]    I need not address the government's argument that many of the unexhausted claims are procedurally defaulted since I conclude they are meritless.

B.      *The Unexhausted Claims*

      1.      *The Ineffective Assistance of Counsel Claims*

      Gathers had three different attorneys during the proceedings before the state trial court.  He alleges that all three provided ineffective assistance for various reasons.[14]  The claim of ineffective assistance must be evaluated in light of the fact that Gathers pleaded guilty instead of proceeding to trial.

      "Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea." *Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).  As the Supreme Court explained in *Tollett*,

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett*, 411 U.S. at 267.

      Thus, as long a guilty plea was made knowingly and voluntarily, any claims of ineffective assistance of counsel relating to events prior to the guilty plea cannot be asserted. *United States v. Torres*, 129 F.3d 710, 715–16 (2d Cir. 1997) (ineffective assistance claim waived by knowing and voluntary guilty plea); *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996) (defendant's "guilty plea effectively waived all ineffective assistance claims relating to

---

[14]      As noted above, Gathers did not initially claim in his § 440.10 motion or his federal habeas petition that his third attorney – who represented him at the time of his guilty plea and sentencing – provided deficient assistance.  Quite to the contrary, Gathers was complimentary in his § 440.10 motion of the attorney who represented him at the time of his plea.  *See* Aff. in Support of Post-Conviction Mot. 11 ("[The third attorney] did his best to provide [Gathers] with meaningful representation, and was very effecient [*sic*] in providing documents.").

events prior to the guilty plea"); *Mickens v. Brown*, No. 05-CV-6117 (JS), 2009 WL 3756646, at *3 (E.D.N.Y. Nov. 4, 2009) ("[E]ven if [petitioner's] counsel behaved ineffectively, [petitioner] waived this claim by voluntarily, knowingly, and intelligently pleading guilty."); *Vasquez v. Parrott*, 397 F. Supp. 2d 452, 463 (S.D.N.Y. 2005) ("The petitioner's unconditional guilty plea waived all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of his plea.").[15]  Since Gathers's plea allocution establishes that his plea was made knowingly and voluntarily, he has no viable habeas claim based on the alleged ineffectiveness of his attorneys prior to his plea.

This conclusion is true even with respect to Gathers's claim that his third attorney – the attorney at the time of his plea – provided ineffective assistance by advising him to plead guilty.  "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *see also Premo v. Moore*, 131 S. Ct. 733, 741–42, 745 (2011); *Tollett*, 411 U.S. at 267 ("[A defendant] may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*."); *Torres*, 129 F.3d at 715–16.

---

[15]    Although the cases often state that a guilty plea "waives" prior constitutional errors, the Supreme Court and the Second Circuit have both explained that "a guilty plea does not 'waive' constitutional challenges so much as it conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue."  *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006) (citing *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975)).  Whatever the precise terminology employed or its meaning, it remains true that "on collateral attack of a judgment of conviction, under *Tollett* a petitioner may not assert pre-plea constitutional violations bearing on the valid establishment of his factual guilt."  *Id.*

Gathers argues that his third attorney's advice to plead guilty was constitutionally deficient because his attorney was unaware of purportedly crucial information. Specifically, Gathers claims his third attorney was unaware that: (a) a ballistics test showed that the gun recovered from his home was not the murder weapon; (b) several newspaper articles had reported the arrest of a different person for the Adames murder; (c) other unspecified documents were in the government's possession and tended to show Gather's innocence. *See* Response to Decision-Order Dated 11-10-11, Nov. 22, 2011, at 3 (D.E. #18). Gathers argues that, had has attorney been aware of this information, he would not have advised Gathers to plead guilty.

The key flaw in Gathers's argument is the premise that his third attorney was unaware of any important information. Gathers's belief that a ballistics test showed the gun recovered from his home was not the murder weapon is mistaken. The government's forensic report, which was attached to Gathers's § 440.10 motion, shows that casings recovered from the scene of the crime and those from a firing test of the gun found in Gather's home were fired from the same weapon. Although the test was inconclusive with respect to the bullets, the fact that the casings matched would have been powerful evidence of Gathers's guilt to a jury.

Moreover, there is nothing to suggest that Gathers's third attorney was unaware of the forensic analysis. Gathers states that his third attorney "spoke with the weapons tester whom he was familiar with, and was informed that the gun recovered from my uncles [*sic*] apartment matched [the murder weapon]." Letter from Gathers, Oct. 19, 2011, at 2 (D.E. #14). Thus, it appears that Gathers's third attorney investigated the forensic report and correctly concluded that it supported the government's case.

There is also nothing to suggest that Gathers's third attorney was unaware of the fact that a different person had initially been identified by an eyewitness and arrested for

15

Adames's murder.  This was discussed repeatedly during the state court proceedings, *see, e.g.*, Apr. 25, 2005 Tr. 5–6, and Gathers's third attorney referred to the fact that "there was another identification" before Gathers pleaded guilty, Jan. 16, 2007 Tr. 8.  The fact that the third attorney may not have read or possessed certain newspaper articles reporting the arrest (which would not have been admissible evidence) is immaterial since he was well aware of the arrest itself.

Finally, Gathers's speculation that his attorney was unaware of other unspecified information cannot establish ineffective assistance.  Conclusory allegations that an attorney failed to conduct a complete investigation are insufficient to establish an ineffectiveness claim. *See, e.g.*, *Castellano v. United States*, 795 F. Supp. 2d 272, 282 (S.D.N.Y. 2011); *Moreau v. Ercole*, No. 08-CV-1545 (ARR), 2011 WL 1741824, at *7 (E.D.N.Y. May 5, 2011).

In short, Gathers has not identified any material information that was unknown to his attorney at the time of his plea.  Given what the attorney did know – including that Gathers had made an initial false exculpatory statement, his fingerprints were recovered at the scene of the crime and the murder weapon was found in his home – the advice to plead guilty was reasonable.  His ineffective assistance claim is therefore plainly meritless.  *See Torres*, 129 F.3d at 715–16.

    2.    *The Prosecutorial Misconduct Claims*

    a.    *The Alleged False Statements Regarding the Forensic Report*

Gathers claims that his plea was involuntary because the prosecution falsely asserted that the gun found in Gathers's home was the murder weapon.  He claims that this purportedly "nonexhistant [*sic*] evidence was a contributing factor to the plea of guilty that was entered by the petitioner."  Response to Order, May 25, 2011, at 1 (D.E. #5).

Even assuming that Gathers's guilty plea did not waive this claim, it lacks any factual basis.  As explained above, the government's forensic report shows that casings recovered from the scene of the crime and those from a firing test of the gun found in Gather's house matched.  Although the test was inconclusive with respect to the bullets, the fact that the casings matched gave the government a proper basis to take the position that the gun found in Gathers's home was the murder weapon.  In short, this claim of prosecutorial misconduct is contravened by the very evidence on which it is based.  It therefore is plainly meritless.

        b.      *The Failure to Disclose Favorable Evidence*

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), the government has an obligation to disclose evidence in its possession that is favorable to the defendant and material.  *See id.* at 87; *United States v. Persico*, 645 F.3d 85, 111 (2d Cir.), *cert. denied*, No. 11-6834, 2011 WL 4901428 (U.S. Nov. 14, 2011).  This duty to disclose encompasses not only exculpatory evidence, but also evidence that could be used to impeach a government witness.  *See Giglio v. United States*, 405 U.S. 150, 154–55 (1972); *see also Strickler v. Greene*, 527 U.S. 263, 280 (1999); *Persico*, 645 F.3d at 111.

To the extent Gathers's *Brady* claim involves impeachment evidence, it is foreclosed by his guilty plea.  *See United States v. Ruiz*, 536 U.S. 622, 633 (2002).  In *Ruiz*, the Supreme Court held "that the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."  *Id.*

To the extent Gathers is claiming that exculpatory evidence was withheld, the law is unsettled as to whether such evidence must be disclosed prior to entry of a guilty plea.  *See Friedman v. Rehal*, 618 F.3d 142, 154 & nn.4–5 (2d Cir. 2010) (noting differing views and declining to decide the issue); *see also Dolney v. United States*, No. 07-CV-4040 (NGG), 2011

17

WL 73076, at *10 (E.D.N.Y. Jan. 10, 2011) ("[T]he Second Circuit has strongly suggested that exculpatory evidence need not be disclosed prior to a guilty plea." (citing *Friedman*, 618 F.3d at 153–54)).  However, this claim must fail because Gathers has not identified any exculpatory evidence the government failed to disclose.[16]  His conclusory assertion that the government failed to turn over evidence proving his innocence is insufficient to establish a *Brady* claim.[17] *See, e.g.*, *Williams v. Comm'r NYS DOC*, No. 07 Civ. 5496 (WHP) (FM), 2011 WL 5301766, at *26 (S.D.N.Y. Oct. 31, 2011), *report & recommendation adopted by* 2011 WL 6182364 (S.D.N.Y. Dec. 12, 2011); *Brown v. United States*, No. 10 Civ. 2380 (LBS), 2011 WL 3273202, at *7 (S.D.N.Y. Aug. 1, 2011) ("Conclusory allegations that the government 'suppressed' or 'concealed' evidence do not entitle [Petitioner] to relief . . . ." (quoting *Harris v. United States,* 9 F. Supp. 2d 246, 275 (S.D.N.Y. 1998), *aff'd mem.*, 216 F.3d 1072 (2d Cir. 2000)) (internal quotation marks omitted) (alterations in original)); *Mallet v. Miller*, 432 F. Supp. 2d 366, 377–78 (S.D.N.Y. 2006).[18]

---

[16]     Gathers may be operating under the mistaken assumption that the only materials his attorney was aware of were those in the record of the state court proceedings.  In discussing his *Brady* claim, Gathers states that he realized after his conviction "how incomplete the court record actually was," since it did not include, for example, the forensic report regarding the gun found at Gathers's home.  Response to Decision-Order Dated 11-10-11, Nov. 22, 2011, at 3 (D.E. #18).  Because Gathers pleaded guilty, there was never a trial at which the parties offered evidence bearing on Gathers's guilt.  Thus, many key documents would not have been part of the court record unless they were attached as exhibits to motions or introduced as evidence at pre-trial hearings.  However, the absence of documents from the court record does not suggest that the government did not disclose them to defense counsel or that defense counsel was unaware of them.  Documents exchanged by counsel are generally not filed in court and thus are not part of the official court record.

[17]     Nothing in Gathers's most recent submission, a letter dated December 29, 2011, alters this conclusion.

[18]     Gathers's conclusory assertions are insufficient to even entitle him to the discovery he has requested.  Discovery is available in federal habeas proceedings only "for good cause."  *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (quoting Rules Governing § 2254 Cases, Rule 6(a)) (internal quotation marks omitted).  "Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review."  *Strickler*, 527 U.S. at 286.  Otherwise, every habeas petitioner would be able to obtain broad discovery simply by asserting that the government withheld some unspecified evidence in violation of *Brady*.  This would turn the good-cause standard of Rule 6(a) into a license "to engage in a fishing expedition."  *Pizzuti v. United States*, --- F. Supp. 2d ----, No. 10 Civ. 199 (RJH) (HBP), 2011 WL 3652293, at *8

18

3.     *The Claimed Defects in the Felony Complaint and Grand Jury Procedures*

A petitioner may obtain federal habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Defects that violate only state law, no matter how substantial, are not themselves grounds for granting a federal writ of habeas corpus.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (internal quotation marks and citations omitted)); *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (internal quotation marks and citation omitted) (alteration in original)); *Carvajal v. Artus*, 633 F.3d 95, 107 (2d Cir.) (same), *cert. denied*, 132 S. Ct. 265 (2011).

Federal law does not micromanage the procedures by which states lodge criminal charges.  The federal guarantee of due process "requires only that a defendant be "advise[d] . . . of the nature and cause of the accusation in order that he may meet it and prepare for trial, and after judgment, be able to plead the record and judgment in bar of a further prosecution for the same offense[.]"  *Nelson v. Heath*, No. 11-CV-2183 (JG), 2011 WL 4711763, at *8 (E.D.N.Y. Oct. 3, 2011) (quoting *Wong Tai v. United States,* 273 U.S. 77, 80–81 (1927)) (alterations in original).  "Challenges to state indictments are only cognizable on habeas review if the indictment fails to satisfy the basic due process requirements:  notice of the 'time, place, and essential elements of the crime.'"  *Id.* (quoting *Scott v. Superintendent, Mid-Orange Corr. Facility*, No. 03-CV-6383, 2006 WL 3095760, at *6 (E.D.N.Y. Oct. 31, 2006) (quoting *Carroll v.*

---

(S.D.N.Y. Aug. 18, 2011) (internal quotation marks and citations omitted).  Accordingly, the request for discovery is denied.

*Hoke*, 695 F. Supp. 1435, 1438 (E.D.N.Y. 1988), *aff'd mem.*, 880 F.2d 1318 (2d Cir. 1989)))
(other internal quotation marks omitted).

      Moreover, "[t]he Supreme Court has held that the federal constitution 'doe[s] not
require the States to observe the Fifth Amendment's provision for presentment or indictment by
a Grand Jury.'"  *Id.* (quoting *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972)); *see also, e.g.*,
*O'Kane v. Kirkpatrick*, No. 09 Civ. 05167 (HB) (THK), 2011 WL 3918158, at *3 (S.D.N.Y. Aug.
25, 2011) ("There is no federal constitutional right to a grand jury in state criminal
proceedings.").  Since there is no federal right to an indictment by grand jury, deficiencies in
state grand jury procedures are generally not a proper basis for granting habeas relief.  *See, e.g.*,
*Mirrer v. Smyley*, 703 F. Supp. 10, 11–12 (S.D.N.Y.), *aff'd mem.*, 876 F.2d 890 (2d Cir. 1989);
*see also Davis v. Mantello*, 42 F. App'x 488, 490 (2d Cir. 2002).[19]

      Neither of the deficiencies asserted by Gathers – the denial of his right to testify
and the failure to present exculpatory evidence – are violations of federal law.  *See United States
v. Williams*, 504 U.S. 36, 51–52 (1992) (because the purpose of a grand jury is to assess whether
there is adequate evidence to support bringing a charge rather than to adjudicate the defendant's
guilt, a defendant has no right to testify nor is a prosecutor obligated to present exculpatory
evidence); *see also United States v. Regan*, 103 F.3d 1072, 1081 (2d Cir. 1997) (the government
has "no obligation to present exculpatory material to a grand jury"); *United States v. Ciambrone*,
601 F.2d 616, 622 (2d Cir. 1979) ("[A] defendant does not have a constitutional right to appear

---

[19]    In *Lopez v. Riley*, 865 F.2d 30 (2d Cir. 1989), the Second Circuit held that deficiencies in grand
jury proceedings are not cognizable in federal habeas proceedings because a defendant's conviction after a trial by
jury renders any such deficiencies harmless as a matter of law.  *See id.* at 32–33.  Although Gathers was convicted
pursuant to a guilty plea rather than a jury verdict, numerous courts have applied *Lopez*'s rationale to guilty pleas.
*See Fabre v. Taylor*, No. 08 Civ. 5883 (DLC) (AJP), 2009 WL 162881, at *18 (S.D.N.Y. Jan. 20, 2009) (collecting
cases), *report & recommendation adopted by* 2009 WL 1457169 (S.D.N.Y. May 26, 2009).  Thus, his claim lacks
merit under *Lopez* as well.

personally before the grand jury.").  Thus, even assuming he was wrongly denied the right to testify – a claim that is contradicted by his own former attorney's affidavit – that denial violated no principle of federal law.  Similarly, while Gathers might have wanted to present to the grand jury evidence that a different person had initially been identified as Adames's killer, federal law gave him no right to do so.

With regard to the felony complaint, Gathers does not argue that he lacked sufficient notice of the nature of the charges against him.  His claims regarding technical defects in the manner in which the complaint was verified or supported are, at best, claims regarding state law only.

In short, Gathers's claims regarding the felony complaint and grand jury procedures do not implicate federal law.  Accordingly, I conclude they are plainly meritless in the context of a federal habeas proceeding.[20]

C.      *The Exhausted Speedy Trial Claim*

1.      *Standard of Review*

There is no dispute that Gathers has properly exhausted his speedy trial claim and that claim is therefore ripe for review.  However, because the state court adjudicated that claim on the merits, an extremely stringent standard of review applies.  Habeas relief would be proper only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or

---

[20]      Gathers's claims regarding the grand jury proceedings and the felony complaint are also meritless on an alternative ground:  as with the ineffective assistance claims, Gathers's guilty plea waives these claims.  *See, e.g.*, *Smith v. Burge*, No. 03 Civ. 8648 RWS, 2005 WL 78583, at *8 (S.D.N.Y. Jan. 12, 2005).

"was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision may contradict or unreasonably apply clearly established federal law in one of three different ways.  The decision must:

> (1) "arrive[ ] at a conclusion opposite to that reached by [the Supreme Court] on a question of law"; (2) "decide[ ] a case differently than [the Supreme Court] on a set of materially indistinguishable facts"; or (3) "identif[y] the correct governing legal principle . . . but unreasonably appl[y] that principle to the facts of the prisoner's case."

*Portalatin v. Graham*, 624 F.3d 69, 79 (2d Cir. 2010) (en banc) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)) (alterations in original), *cert. denied*, 131 S. Ct. 1691, *and cert. denied*, 131 S. Ct. 1693 (2011).  In applying this deferential standard, any factual determinations made by the state court are "presumed to be correct" unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence."  *Id.* § 2254(e)(1).

This highly deferential standard prevents a federal court from granting habeas relief merely because it concludes a state court applied federal law incorrectly.  *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).  Habeas relief can be granted only if the application of federal law was so extreme as to have been unreasonable.  *Id.*  To determine whether a state court's error was unreasonable, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

22

2.      *Application to the Speedy Trial Claim*

      a.      *Clearly Established Federal Law Governing the Right to a Speedy Trial*

"[T]he Sixth Amendment guarantee[s] that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial.'"  *Vermont v. Brillon*, 129 S. Ct. 1283, 1287 (2009) (second and third alterations in original).  The Supreme Court has held that a four-factor balancing test governs whether a defendant's constitutional right to a speedy trial has been violated.  *See Barker v. Wingo*, 407 U.S. 514, 530 (1972).  These four factors are:  "[1] Length of delay, [2] the reason for the delay, [3] the defendant's assertion of his right, and [4] prejudice to the defendant."  *Id.* at 530.

      b.      *Whether the State Court Contradicted or Unreasonably Applied Clearly Established Federal Law*

The Appellate Division did not cite Supreme Court precedent or the four-factor test of *Barker*.  Instead, it cited and applied the New York Court of Appeal's five-factor test from *People v. Taranovich*, 335 N.E.2d 303 (N.Y. 1975).  *See People v. Gathers*, 883 N.Y.S.2d 913, 913 (App. Div. 2009) (citing *People v. Vernace*, 756 N.E.2d 66 (N.Y. 2001); *Taranovich*, 335 N.E.2d 303).  The five *Taranovich* factors are:

> (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay.

*Taranovich*, 335 N.E.2d at 306.

Although the *Taranovich* factors and the *Barker* factors are not identically phrased, they are essentially identical tests.  *Smith v. Maher*, 468 F. Supp. 2d 466, 474 (W.D.N.Y. 2006) ("The *Taranovich* factors essentially mirror the four-part inquiry outlined by the Supreme

Court in *Barker v. Wingo* to determine whether a defendant's speedy trial right had been violated by prosecutorial delay . . . ."); *Frazier v. Czarnetsky*, 439 F. Supp. 735, 736–37 (S.D.N.Y. 1977) ("The *Taranovich* factors . . . are virtually identical to the four factors that *Barker* . . . establishes as dispositive of Sixth Amendment claims of undue delay."). Indeed, the Supreme Court has acknowledged that, in identifying the factors relevant to analysis of a speedy trial claim, "some might express them in different ways." *Barker*, 407 U.S. at 530. That is essentially what the New York Court of Appeals did in *Taranovich*.

The first two factors of both tests are identical – the length of and reason for the delay. The fourth and fifth *Taranovich* factors – pretrial incarceration and impairment of the defense – are, in combination, largely equivalent to the fourth *Barker* factor, prejudice to the defendant. *See Barker*, 407 U.S. at 532 (identifying the components of prejudice as oppressive pretrial incarceration, anxiety and concern of the accused, and impairment of the defense). The third *Taranovich* factor – the nature of the underlying charge – is not listed among the four *Barker* factors, but the Supreme Court identified it as bearing on whether the length of delay was excessive. *See id.* at 530–31 ("[T]he length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." (footnote omitted)).

The third *Barker* factor – whether the defendant has asserted his right – is not among the *Taranovich* factors. But the omission of this factor is generally in a defendant's favor. While the *Barker* standard penalizes a defendant who does not assert his right to a speedy trial, the New York Court of Appeals "has long recognized that a defendant should not be expected to push his own prosecution." *People v. Staley*, 364 N.E.2d 1111, 1114 (N.Y. 1977). Therefore, I

24

conclude that application of the *Taranovich* factors is not "contrary to" the federal law clearly established by *Barker*.  *See Garcia v. Annetts*, No. 9:08-CV-0736 (LEK/RFT), 2011 WL 4810012, at *6 (N.D.N.Y. Sept. 1, 2011) ("[T]he Appellate Division's utilization of 'the *Taranovich* factors . . . [which] do not contradict the *Barker* factors . . . was not "contrary to" clearly established federal law as established by the Supreme Court.'" (quoting *Williams v. Mazzuca*, No. 02 Civ. 9131 (GBD), 2007 WL 541699, at *3 (S.D.N.Y. Feb. 20, 2007)) (alterations in original)), *report & recommendation adopted by* 2011 WL 4814913 (N.D.N.Y. Oct. 11, 2011); *Koonce v. Connell*, No. 08-CV-615 (VEB), 2011 WL 1303429, at *5–6 (W.D.N.Y. Apr. 1, 2011); *Smith v. Murray*, No. 03-CV-6553L, 2007 WL 2581687, at *7 (W.D.N.Y. Sept. 5, 2007); *cf. Rosario v. Ercole*, 601 F.3d 118, 123–26 (2d Cir.) (holding that a state court's application of New York's standard for assessing a claim of ineffective assistance of counsel, which is different from – and more generous to defendants than – the Supreme Court's standard, does not result in a decision "contrary to" clearly established federal law), *reh'g en banc denied*, 617 F.3d 683 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 2901 (2011).

I also conclude that the Appellate Division neither decided the case differently than the Supreme Court on a set of materially indistinguishable factors nor unreasonably applied the applicable law.  In fact, some similarities between this case and *Barker* – in which the Supreme Court held there was no denial of the constitutional right to a speedy trial – underscore that the Appellate Division's decision was neither contrary to nor an unreasonable application of clearly established federal law.

In *Barker*, the delay between arrest and trial was "well over five years."  *Barker*, 407 U.S. at 533.  The Supreme Court held that delay was "extraordinary" and weighed in favor of a speedy trial violation.  *Id.* at 533–34.  Here, the pre-indictment delay of which Gathers

25

complains was less than 3 years.[21]  The total period from arrest to when Gathers's pleaded guilty

(or trial would have otherwise begun) was less than five years.  Thus, the delay here was less

than that in *Barker*.

As for the reason for the delay, the Supreme Court in *Barker* held that only seven

months of that five-year delay could "be attributed to a strong excuse."  *Id.* at 534.  Here, the

Appellate Division found that "the ongoing investigation provided a reasonable excuse for the 2

1/2-year delay between the commission of the crimes and the indictment of the defendant."

*Gathers*, 883 N.Y.S.2d at 913.[22]  Moreover, although the Appellate Division did not refer to this

fact, the prosecution apparently delayed obtaining an indictment until it could locate a particular

---

[21]     The record does not include a transcript of the § 180.80 hearing that resulted in Gathers's release
from custody in April 2003.  It is therefore not entirely clear if Gathers was merely released on bail or if the
complaint against him was dismissed at that time.  If the complaint had been dismissed, then the entire period from
April 2003 to October 2004 (when Gathers was indicted) would not count toward the period of delay for speedy-trial
purposes.  *See United States v. MacDonald*, 456 U.S. 1, 7–10 (1982).  In that event, the length of delay during the
pre-indictment period for speedy-trial purposes would have been only 14 months and Gathers's speedy trial claim
would be considerably weaker.  I need not resolve the question of whether the complaint was dismissed because
even assuming the speedy-trial clock ran from April 2003 to October 2004, the length of the delay combined with
the other *Barker* factors does not warrant federal habeas relief.

[22]     Gathers does not complain about the length of the post-indictment period.  Much of that delay was
attributable to Gathers's various pre-trial motions rather than any delay by the prosecution.

26

witness.[23]   The Supreme Court recognized that "a missing witness" was "a valid reason" that "should serve to justify appropriate delay."  *Barker*, 407 U.S. at 531.[24]

The degree of prejudice to Gathers from the delay was comparable to that in *Barker*.  In *Barker*, the defendant had been incarcerated for ten months.  *Id.* at 534.  There was no claim that any defense witnesses had died or become unavailable.  *Id.*  Here, Gathers was incarcerated for a much greater period, but all but one or two months of his incarceration resulted from his parole violation and his conviction for an unrelated offense.  Moreover, because the trial court subsequently ordered that Gathers's manslaughter sentence run consecutive to any undischarged sentences for other offenses, there is no specter here that Gathers was deprived the opportunity to obtain a concurrent sentence.

The issue of whether Gathers's defense was impaired is more complex.  In his motion to dismiss the indictment on speedy trial grounds, Gathers made only conclusory assertions that unnamed witnesses who would offer unspecified testimony had become

---

[23]     The government has never identified who this missing witness was or the nature of the witness's testimony.  At oral argument, Gathers stated that the missing witness was his own uncle.  Oct. 17, 2011 Tr. 25–26.  According to Gathers, the uncle had cut a deal with the prosecutor to avoid a prison sentence on a firearm charge by promising to testify that Gathers had admitted his role in the Adames shooting.  *Id.* at 26.  Gathers claims that his uncle later refused to offer that testimony and the prosecution repeatedly postponed the grand jury until it could be sure of how the uncle would testify.  *Id.*  The government has not challenged Gathers's account.

     Assuming Gathers's account is true, it would have been disingenuous for the government to claim that the uncle was "unavailable."  However, I need not determine whether Gathers's account is accurate or what its legal significance would be since (i) Gathers did not raise any argument before the state courts that the government improperly delayed the grand jury because it was unsure of the uncle's testimony; and (ii) the Appellate Division did not rely on the purported unavailability of a witness in rejecting Gathers's speedy trial claim.  Instead, it ruled that the ongoing government investigation was a legitimate reason for the delay.  Indeed, if the uncle's testimony was wavering, as Gathers contends, that only underscores that additional investigation was appropriate.

[24]     Although not addressed by the Appellate Division, any delays caused by Gathers's assigned attorneys' requests for continuances as well as his efforts to twice change his attorney weigh against his speedy trial claim.  *See Brillon*, 129 S. Ct. at 1291–92 (assigned counsel's failure to move the case forward and delay due to change of counsel are attributable to the defendant).

27

unavailable and that his own memory had faded in unspecified ways.[25]  However, Gathers

asserted in his § 440.10 motion that a particular witness, Rafael Cosme, had died during the pre-

indictment period.  According to Gathers, Cosme would have testified that he observed an

individual running from the scene of the crime – presumably Adames's killer – and that the

person was not Gathers.

In reviewing an issue that was adjudicated on the merits in state court, a federal

court "is limited to the record that was before the state court that adjudicated the claim on the

merits."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  Since the assertions regarding

Cosme were not before the Appellate Division when it rejected Gathers's speedy trial claim, I

cannot consider these assertions in assessing whether that decision was contrary to or an

unreasonable application of federal law.[26]  *See id.*

The most significant distinction between *Barker* and this case is that Gathers

asserted his speedy trial right sooner – roughly a month after he had been indicted.  Gathers had

complained about the delay even earlier, in his October 2002 complaint about his first attorney.

However, only a little more than two-and-a-half years had passed when Gathers first moved to

dismiss the indictment on speedy trial grounds, which is not as extraordinary a delay as that in

*Barker*.  As in *Barker*, Gathers never sought an immediate trial.  *Cf. Barker*, 407 U.S. at 534–35

---

[25]     While a defendant need not identify specific ways in which his defense was impaired, the lack of
specificity in the claimed prejudice is relevant when weighing prejudice against the other *Barker* factors.  *See
Doggett v. United States*, 505 U.S. 647, 655–56 (1992).

[26]     I note that on the day Gathers's trial was scheduled to begin, his attorney filed a notice of alibi
indicating that he had found a witness who "will testify that he was outside, saw the . . . person that is going to be
described as the shooter in this case dressed in black walk past him and noticed also that my client who was
somebody that he knows up the block."  Jan. 16, 2007 Tr. 14.  It is unclear if this witness was Cosme or a different
person.  If it was Cosme, that would contradict Gathers's assertion that Cosme had died during the pre-indictment
period.  If it was a different person, then the fact that Gathers had a witness who was prepared to offer substantially
the same testimony as Cosme significantly mitigates any prejudice from the loss of Cosme's testimony.

(noting that defendant had moved to dismiss the indictment but "no alternative motion was made for an immediate trial").

Given the similarities to this case and *Barker*, I cannot conclude that the Appellate Division reached a decision different than the Supreme Court's on a materially indistinguishable set of facts. Quite the opposite, the Appellate Division's decision is consistent with the Supreme Court's on largely similar facts. I do not think Gathers's earlier assertion of his speedy trial right or his generalized claims of prejudice to his defense command a different outcome in this case. Therefore, I also cannot conclude that the Appellate Division unreasonably applied clearly established federal law.

This conclusion is bolstered by the nature of the right at issue. The Supreme Court has characterized the right to a speedy trial as "amorphous," "vague" and "slippery." *Barker*, 407 U.S. at 521–22. The four factors relevant to the question of whether the speedy trial right has been violated "have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Id.* at 533. The generality and vagueness of the standard applicable to the speedy trial claim cautions against a conclusion that the state court's application of that standard was unreasonable. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted) (alteration in original). Here, the generality of the *Barker* standard gives state courts wide latitude to weigh the different factors. In this instance, the Appellate Division's application was reasonable.

   c.  *Whether the State Court's Determination of the Facts Was Unreasonable*

   To the extent the Appellate Division's decision rested on a determination of the facts, I cannot conclude its determination was unreasonable. Based on the government's affirmation, there was an adequate basis for the state courts to conclude that the delay in indicting Gathers was justified by the government's ongoing investigation. While Gathers asserts that the delay was designed to give the prosecution some illegitimate tactical advantage over him, the Appellate Division's conclusion to the contrary was not an unreasonable factual determination. Gathers certainly has not presented clear and convincing evidence that would rebut the presumption that the state court's factual findings are correct. *See* 28 U.S.C. § 2254(e)(1).

D.  *The Discrepancy Regarding the Date of the State Court's Denial of the § 440.10 Motion*

   Gathers has asserted that there has been "some foul play" with respect to the state court's decision on his § 440.10 motion. Letter from Gathers, dated Nov. 2, 2011, at 1 (D.E. #17). He claims this is part of a pattern of "falsifying documents" and asks me to appoint counsel to represent him so that he may "remedy this practice." *Id.* at 2.

   In support of his claim of foul play, Gathers notes the government's representation to the Court during oral argument that the state court had denied Gathers' § 440.10 motion on September 16, 2011. *See* Oct. 17, 2011 Tr. 9–10. However, the government subsequently informed the Court that the state court had not issued a decision in September 2011. See Letter from John F. McGoldrick, Oct. 21, 2011, at 1 (D.E. #13). In fact, the state court's decision is dated October 19, 2011 – two days after the argument in this Court.

   In addition, Gathers has submitted a notice he received from the Motions Department of the Queens County Supreme Court, dated October 14, 2011, informing him that

the motion was denied on September 14, 2011.  Letter from Gathers, Nov. 2, 2011, at 3.  The notice was in response to Gathers's request for discovery, which was placed in his file rather than forwarded to the appropriate court part due to the mistaken understanding that the § 440.10 motion had been denied.

It appears to be without question that there was some kind of mistake regarding the status of Gathers's § 440.10 motion.  Court staff believed the motion had been denied in September 2011 when it actually remained pending until October 19, 2011.  This may have resulted in Gathers's discovery request going unnoticed by the judge who decided his § 440.10 motion.  However, I cannot conclude that there was foul play.  The mistaken belief by court personnel that the motion had been decided in September could easily have been the result of an innocent miscommunication rather than bad faith.  Moreover, any prejudice Gathers may have suffered as a result of his discovery request not being properly handled by the state court should be addressed to that court or to the Appellate Division.  Accordingly, I deny Gathers's request for appointment of counsel.

31

CONCLUSION

For the reasons stated above, Gathers's motion for appointment of counsel, his motion to stay his habeas petition and the petition itself are denied.  As Gathers has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.  *See* 28 U.S.C. § 2253(c)(2).

So ordered.


John Gleeson, U.S.D.J.

Dated: January 10, 2012
       Brooklyn, New York